

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR 18 2016

CLERK, U.S. DISTRICT COURT
By _____
    Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JAVIOR M. POLK,                    §
                                   §
          Petitioner,              §
                                   §
v.                                 §      No. 4:14-CV-732-A
                                   §
WILLIAM STEPHENS, Director,        §
Texas Department of Criminal       §
Justice, Correctional              §
Institutions Division,             §
                                   §
          Respondent.              §

**MEMORANDUM OPINION**
**and**
**ORDER**

This is a petition for writ of habeas corpus pursuant to 28
U.S.C. § 2254 filed by petitioner, Javior M. Polk, a state
prisoner confined in the Correctional Institutions Division of
the Texas Department of Criminal Justice (TDCJ), against William
Stephens, Director of TDCJ, Respondent. After having considered
the pleadings, state court records, and relief sought by
petitioner, the Court has concluded that the petition should be
denied.

### I.  Procedural History

In 2008 petitioner was indicted in Tarrant County, Texas,
for aggravated assault on a peace officer with a deadly weapon,
an automobile. Clerk's R. 2, ECF No. 10-1. The indictment also

included a repeat offender notice. *Id*. Petitioner waived his

right to jury trial, and entered a plea of not guilty. *Id*. at 47.

Following a bench trial, the trial court found petitioner guilty,

petitioner pleaded true to the repeat offender notice, and the

trial court sentenced petitioner to 20 years' confinement. *Id*.

Petitioner appealed his conviction, but the Eleventh Court of

Appeals of Texas affirmed the trial court's judgment and the

Texas Court of Criminal Appeals refused petitioner's petition for

discretionary review. Op., ECF No. 10-10; Pet. 3, ECF No. 1.

Petitioner also filed a state habeas application challenging his

conviction, which was denied by the Texas Court of Criminal

Appeals without written order on the findings of the trial court.

Adm. R., Writ 80,964-02 denied, ECF No. 10-17. This federal

habeas petition followed.

The state appellate court set out the factual background of

the case as follows:

> At the time of this offense, Jeffrey Fobbs, Jr.,
> an Arlington police officer, was working as an off-duty
> security guard at a Whataburger restaurant in
> Arlington. He testified that, at sometime around 3:20
> a.m., he saw two vehicles enter the parking lot, one
> was a Honda and the other was a Nissan. A female
> passenger got out of the Honda and went into the
> restaurant. The driver of the Honda got into the
> passenger seat of the Nissan. The driver of the Nissan
> then drove into the drive-through line. While Officer
> Fobbs was watching, he noticed that the two men in the

2

Nissan were looking at each other and then looking
down. He could see the passenger reach toward the
center of the car and place something in his lap. He
had seen the same things in connection with narcotics
activity at this Whataburger, and he believed that a
narcotics transaction was taking place in the Nissan.

As Officer Fobbs went to the passenger side of the
Nissan, he heard the passenger say, "Here comes the
police." Although Polk and the female passenger (who
had come out of the Whataburger by this time) both
testified that Officer Fobbs was wearing dark clothing
with neither a badge nor insignia, the officer
testified that he was wearing his City of Arlington
police uniform. The night manager of the Whataburger
also testified that Officer Fobbs was wearing his
police uniform, badge, and sidearm. Officer Fobbs said
that he opened the passenger door of the Nissan and
told everyone to "Freeze, nobody move, police." When he
gave that order, the passenger in the Nissan threw
whatever items were in his lap onto the floor. As
Officer Fobbs attempted to reach across the interior of
the Nissan to take the keys out of the ignition, the
driver, who Officer Fobbs identified as Polk, put the
car in reverse, stepped on the gas, and quickly left
the Whataburger. Polk said that he sped away because he
believed that he was being "car-jacked." As Polk was
driving away, Officer Fobbs was struck by the passenger
door and was knocked to the ground. The officer
suffered injuries that not only required medical
attention but also caused him to miss work for three
days.

Through the use of the license plate number from
the Nissan, law enforcement personnel ultimately
located Polk and arrested him.

Op. 1-2, ECF No. 10-10.

## II.   Issues

In five grounds, petitioner claims his Sixth Amendment right

to effective assistance of counsel was violated (grounds one, two and three); his Fourth Amendment guarantee to protection against warrantless searches was violated (ground four); and the evidence was insufficient to prove petitioner knew the officer was a peace officer (ground five). Pet. 6-7 & Attach., ECF No. 1.

### III.   Rule 5 Statement

Respondent does not believe the petition is time-barred or successive but does believe that one or more of petitioner's claims are unexhausted and/or procedurally barred. Resp't's Answer 4-5, ECF 6.

### IV. Exhaustion/Procedural Default

Respondent claims petitioner's sufficiency-of-the-evidence claim under his fifth ground is unexhausted and procedurally barred. Applicants seeking habeas corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief. 28 U.S.C. § 2254(b)(1); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest court of the state, in this case the Texas Court of Criminal Appeals, on direct appeal or in state post-conviction proceedings. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999); *Fisher*, 169 F.3d at

4

302; *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). The exhaustion requirement is "not satisfied if the petitioner presents new legal theories or factual claims in his federal habeas petition." *Reed v. Stephens*, 739 F.3d 753, 780 (5th Cir. 2014) (quoting *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003)).

Respondent asserts that petitioner did not raise the sufficiency-of-the-evidence claim he now raises in his petition for discretionary review and that the claim is unexhausted and procedurally barred from this Court's review. In his petition for discretionary review, petitioner raised one question: "Does mere suspicious activity return an off-duty police officer to duty? Or must the officer see more-actual criminal activity-to return to duty?" Adm. R., Pet. for Discretionary Review 1, ECF No. 10-8. This Court agrees that petitioner's sufficiency-of-the-evidence claim he now raises does not sufficiently correspond to the claim raised in his petition for discretionary review. Thus, petitioner's sufficiency-of-the-evidence claim raised for the first time in this federal petition is unexhausted for purposes § 2254(b)(1)(A).

Under the Texas abuse-of-the-writ doctrine, however, petitioner cannot now return to state court for purposes of

5

exhausting the claims. TEX. CODE CRIM. PROC. ANN. art. 11.07, §
4(a)-(c). The abuse-of-the-writ doctrine represents an adequate
state procedural bar to federal habeas review. *See Nobles v.
Johnson,* 127 F.3d 409, 423 (5th Cir. 1997). Therefore, absent a
showing of cause and prejudice or a miscarriage of justice, such
showing not having been demonstrated, petitioner's fifth ground
is unexhausted and procedurally barred from this Court's review.
*See Smith v. Johnson*, 216 F.3d 521, 523-24 (5th Cir. 2000).

Federal habeas review of a claim is also procedurally barred
if the last state court to consider the claim expressly and
unambiguously based its denial of relief on a state procedural
default. *Coleman v. Thompson,* 501 U.S. 722, 729 (1991).
Respondent asserts petitioner's Fourth Amendment claim under his
fourth ground is procedurally barred because, although raised in
his state habeas application, the state habeas court found that
the claim could have been raised on direct appeal, but was not,
and thus was forfeited. Resp't's Answer 5-6, ECF No. 13; Adm. R.,
Writ 80,964-02, 109, 112, ECF No. 10-15. The Texas Court of
Criminal Appeals has repeatedly held that claims that could have
been raised on direct appeal may not be raised in a state habeas
petition. *Ex parte Gardner,* 959 S.W.2d 189, 199-200 (Tex. Crim.
App. 1998). Under the procedural default doctrine, a federal

6

court may not consider a state prisoner's federal habeas claim when the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and adequate state procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 729, (1991); *Johnson v. Puckett*, 176 F.3d 809, 823 (5th Cir. 1999); *Fisher v. State*, 169 F.3d 295, 300 (5th Cir. 1999).

The state court clearly relied upon a firmly established and regularly followed state procedural rule to deny petitioner's fourth ground that, in turn, represents an adequate state procedural bar to federal habeas review. *Ex parte Gardner*, 959 at 199. *See also Ex parte Banks*, 769 S.W.2d 539, 540 (Tex. Crim. App. 1989) (holding "the Great Writ should not be used to litigate matters which should have been raised on appeal"). Therefore, absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated, petitioner's fourth ground is procedurally barred from the court's review.

## V. Discussion

### *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was

adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The statute further requires that federal courts give great deference to a state court's factual findings. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). When the Texas Court

8

of Criminal Appeals denies a federal claim in a state habeas corpus application without written order, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Johnson v. Williams,* 133 S. Ct. 1088, 1094 (2013) (quoting *Harrington v. Richter,* 562 U.S. 86, 98-99 (2011)). With these principles in mind, the court addresses the remainder of petitioner's claims.

### *Ineffective Assistance of Counsel*

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). An ineffective assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Id.* at 688.

In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of

reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the *Strickland* standard in light of the state court record. *Harrington,* 562 U.S. at 100-01 (quoting *Williams,* 529 U.S. at 410); *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Thus, a federal court's review of state court decisions regarding ineffective assistance of counsel must be "doubly deferential" so as to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011)).

Petitioner claims his trial counsel, J. Warren St. John, was ineffective by failing to–

1)  fully investigate the case, gather exculpatory evidence—a surveillance video, and interview and present a number of witnesses, including Chelsea Jones, Brian Edmondson, Edmondson's "lady friend" "Victoria," to testify that Officer Fobbs was not dressed in police uniform and never identified himself as a police officer;

2)      file motions for an investigator and for discovery
        earlier and "qualify a definite" ruling on pre-
        trial motions; and

3)      object to the inconsistencies in Officer Fobbs's
        testimony and incident report.

Pet. 6-7, ECF No. 1; Pet'r's Mem., ECF No. 2.[1]

Petitioner raised his ineffective assistance claims in his

state habeas application and presented evidentiary support,

including the officer's incident report(s) and photographs of a

surveillance camera outside a Whataburger restaurant. Adm. R.,

Writ 80,964-02, 26-43, ECF No. 10-15. Trial counsel responded to

petitioner's allegations as follows:

> I am a member in good standing with the State Bar
> of Texas and am admitted to practice before the United
> States Supreme Court, the United States Court of
> Appeals for the Fifth Circuit and the United States
> District Court, Northern District of Texas. My practice
> is limited to criminal defense in both the State and
> Federal courts. I have tried over 162 felony jury
> trials to final verdict, including nine capital murder
> trials in which the death penalty was sought. I have
> perfected appeals in both the State and Federal courts
> over 140 times. My client base is statewide.
>
> On March 13, 102, JAVIOR M. POLK filed an
> Application for Post-Conviction Writ of Habeas Corpus.
> The petition alleges that I was ineffective in my
> representation of him. I submit that I was effective
> and state the following to show that Mr. Polk was
> competently and effectively represented.

---

[1]Petitioner's memorandum is not paginated.

. . .

III.

RESPONSE TO FAILURE TO PROPERLY AND
EFFECTIVELY REPRESENT THE DEFENDANT

All relevant facts of the case were investigated
and presented at trial. The Court appointed a Private
Investigator who went to the Whataburger on many
occasions to investigate the facts of the case. My
Investigator and I went to the crime scene to talk to
any witnesses or potential witnesses. All relevant
witnesses were presented at trial.

Mr. Polk was interviewed on many occasions about
his version of the events. Pre-Trial Motions were filed
and addressed by the Court.

All of the discovery was discussed with Mr. Polk
in detail. Mr. Polk elected to have a trial after
rejecting the State's low offer.

Mr. Polk was kept informed at all times about the
status of his cases. Any exculpatory evidence that was
available was presented at trial. The officer was
extensively cross examined regarding his version of
events at the time of the incident.

Mr. Polk's exposure at trial was fifteen (15)
years in prison to Life. The Court sentenced him to
twenty (20) years in prison. All relevant punishment
issues were presented on Mr. Polk's behalf. Mr. Polk
was kept informed about the strategies of his case at
all times.

When representing a client, my goal is always to
achieve the best possible result with his or her
direction, which is exactly what I did with Mr. Polk's
case. All course of conduct was strategically designed
to benefit my client.

*Id.* at 80-85.

The state also presented documentary evidence, including the affidavit of the court-appointed investigator for the defense, Doug Lambertsen, who averred:

> Mr. St. John and the Defendant requested that I locate a potential witness for Mr. Polk by the name of Brian Edmondson. I went to Mr. Edmondson's residence on February 25 and 26, 2009. Both times, Mr. Edmondson was not home. I left my business card for Mr. Edmondson to call me. He never did. There were two phone numbers in the police report, which I called for Mr. Edmondson. I don't recall if he had voice mail or not, but I know he never contacted me regarding any issue in this case.

> Mr. St. John and I went to the Whataburger off of South Watson Road, in Arlington, to locate any possible witness, or witnesses regarding this offense. I believe Mr. St. John and I went there twice, and I went at least one more time, without Mr. St. John. This attempt to locate any potential witnesses was done in preparation for trial. We interviewed Whataburger employees and patrons, who were present, to see if they had any knowledge of the offense. No one at Whataburger, when we were there, had any knowledge of the offense.

> Javior Polk was interviewed approximately three to four times, or more, for Mr. St. John, in preparation for trial.

*Id.* at 122-23.

Based on counsel's affidavit, the documentary evidence, and his own recollection and personal knowledge of the trial proceedings, the state habeas judge adopted the state's proposed findings of fact and conclusions of law, including the following findings:

19. Hon. St. John presented at trial what exculpatory evidence he had available.

20. Chelsea Jones testified on Applicant's behalf.

21. Applicant presents no affidavit from Bryan Edmondson that he was willing and available to testify.

22. Applicant presents no affidavit from Bryan Edmondson as to what he would have testified.

23. Applicant does not present the last name or contact information for "Victoria."

24. Applicant presents no affidavit from "Victoria" that she was willing and available to testify.

25. Applicant presents no affidavit from "Victoria" as to what she would have testified.

26. Applicant presents no evidence that there were additional witnesses available to testify on his behalf.

27. Applicant has presented undated pictures of a Whataburger purported to be the one of the offense that has what appears to be camera orbs on the outside.

28. Undated photos of possible cameras are not evidence that a surveillance video existed from the time of the offense.

29. There is no evidence that a surveillance video of the incident existed.

30. Applicant asserts that Hon. St. John told him no video existed.

. . .

32. Applicant presents no evidence that exculpatory

14

evidence existed that counsel failed to present to the Court.

33. Applicant presents no evidence that counsel's investigation was deficient.

34. Hon. St. John filed seven motions in this case, including a motion for appointment of an investigator.

35. This Court has personal knowledge that Tarrant County District Attorney's Office has an "open file" policy that negates the need for a motion for discovery.

36. There is no evidence that the State failed to disclose evidence or witnesses.

    . . .

42. Officer Fobbs personally saw the plastic bag containing the drugs and saw the transaction that, in his experience and training, indicated to him that [a] drug deal was taking place.

43. There is no evidence that a surveillance video would have been exculpatory.

44. There is no evidence that the State withheld exculpatory evidence.

45. There is no evidence that Hon. St. John did not receive all of the information and evidence requested.

    . . .

47. There is no evidence that evidence was not turned over.

48. There is no evidence that witnesses were not turned over.

. . .

50. Hon. St. John cross-examined Officer Fobbs regarding his version of the incident.

51. On cross-examination, Hon. St. John tried to show that Officer Fobbs mistook Applicant's actions for suspicious activity because Officer Fobbs had immediately prior arrested the parties to a drug deal across the street.

52. On cross-examination, Hon. St. John highlighted the fact that Officer Fobbs was 20 feet away inside the Whataburger and the lighting was not great in the parking lot when he first became suspicious of the activity.

53. On cross-examination, Officer Fobbs admitted that he was not a narcotics officer.

54. On cross-examination, Hon. St. John asked Officer Fobbs about the fact that Officer Fobbs wrote in his report Acura but testified that it was a Honda.

55. Officer Fobbs referred to the Nissan as a "dark colored Nissan Sentra" in his offense report.

56. Officer Fobbs testified that the Nissan was a "tan gray Nissan Sentra or Altima."

57. At 0330 and bad lighting, it is reasonable that the Nissan looked dark colored to Officer Fobbs.

58. Applicant's vehicle has damage on it consistent with hitting Officer Fobbs.

59. Applicant admitted that he was present and that it was his vehicle.

60. Whether Applicant was the driver of the vehicle that injured Officer Fobbs was never at issue.

61. Hon. St. John properly did not cross-examine
Officer Fobbs regarding his description of the
Nissan because there was no question that
Applicant's car is the one that Officer Fobbs was
hit with.

62. On cross-examination, Hon. St. John set Officer
Fobbs up to admit that his actions, opening
Applicant's car door and leaning in without
permission, was not police procedure.

63. On cross-examination, Officer Fobbs stated that
the Nissan had tinted windows on the side of the
vehicle but he could see clearly through the rear
window.

64. On cross-examination, Officer Fobbs admitted that
the windows of the Nissan were up.

65. Officer Fobbs wrote in his police report that he
heard the driver yell, "there goes the police."

66. Officer Fobbs testified that he heard the
passenger yell, "Here comes the police."

67. Whether it was the passenger or the driver who
alerted about the police would not have gone to
Officer Fobbs['s] credibility but to the fact that
it was 0330 in the morning, Officer Fobbs was
moving around the vehicle and attempting to grab
the front passenger door, and he *heard* and did not
*see* the person yelling.

68. Chelsea Jones testified that she and Applicant's
friend's girlfriend came into the Whataburger to
use the restroom.

69. Officer Fobbs initially noted in his report that
there were two females, one from each car.

70. Officer Fobbs followed one female back to the car.

71. Officer Fobbs noted that he detained one female on

scene, Chelsea Jones.

72. Chelsea Jones testified that she was the female that Officer Fobbs followed back to the car.

73. Officer Fobbs did not refer to the second female in his report after she entered the restaurant.

74. It is reasonable that Officer Fobbs did not discuss the second female in his report because she was not present at the time of the altercation and left the scene when all the commotion occurred.

75. Officer Fobbs was not asked about the other vehicle or second female.

76. Because the offense occurred in the Nissan and not the Honda, it was reasonable trial strategy not to ask Officer Fobbs about the Honda after the Nissan proceeded to the drive through.

77. Because the second female was not involved in the assault, and Officer Fobbs only referred to her initially, it was reasonable trial strategy not to ask Officer Fobbs about her.

78. In light of the facts of this case, Hon. St. John's cross-examination of Officer Fobbs was prepared and proper.

79. Mr. Lambertson's affidavit is credible and supported by the record.

80. Hon. St. John's affidavit it credible and supported by the record.

81. There is no evidence that the outcome of the proceeding would have been different but for the alleged misconduct.

*Id.* at 104-09 (citations to the record omitted).

18

Based on its factual findings, and applying *Strickland* and related state case law, the state court concluded petitioner failed to prove that there was exculpatory evidence that counsel failed to obtain; that counsel failed to interview available witnesses; that counsel failed to present available witnesses; that counsel failed to file proper motions; that counsel's cross-examination of Officer Fobbs was deficient; or that counsel's representation fell below an objective standard of reasonableness. *Id.* at 143-45. The court further concluded petitioner had failed to show a reasonable probability that the result of the proceeding would have been different had counsel investigated the case more; attempted to interview more witnesses; filed more motions; or cross-examined Officer Fobbs with his police report more. *Id.* at 111. The Texas Court of Criminal Appeals rejected petitioner's claims on the habeas court's findings.

Deferring to those findings in the absence of clear and convincing evidence in rebuttal, and having independently reviewed petitioner's claims in conjunction with the record, the state courts' application of *Strickland* was not unreasonable. Petitioner's claims are conclusory, with no legal and/or evidentiary basis, refuted by the record, or involve strategic

and tactical decisions made by counsel, all of which generally do
not entitle a state Petitioner to federal habeas relief. *See,
e.g., Strickland,* 460 U.S. at 689 (holding strategic decisions by
counsel are virtually unchallengeable and generally do not
provide a basis for post-conviction relief on the grounds of
ineffective assistance of counsel); *Green v. Johnson,* 160 F.3d
1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in
support of a claim of ineffective assistance of counsel are
insufficient to raise a constitutional issue."); *United States v.
Green,* 882 F.2d 999, 1003 (5th Cir.1989) (providing "[a]
defendant who alleges a failure to investigate on the part of his
counsel must allege with specificity what the investigation would
have revealed and how it would have altered the outcome of the
trial"); *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir. 1985)
(claims "based upon uncalled witnesses [are] not favored because
the presentation of witness testimony is essentially strategy and
thus within the trial counsel's domain, and . . . speculations as
to what these witnesses would have testified is too uncertain").
A habeas petitioner must demonstrate that counsel's performance,
in light of the entire proceeding, was so inadequate as to render
his trial unfair. *Washington v. Watkins,* 655 F.2d 1346 (5th
Cir.1981). This, petitioner has not accomplished. Petitioner is

not entitled to relief under his first, second or third grounds.

For the reasons discussed herein,

The Court ORDERS the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied.  For the reasons discussed herein, the Court further ORDERS that a certificate of appealability be, and is hereby, denied.

SIGNED April ___18___, 2016.


_____
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE